UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
RODGERICK BUNTIN,

        Plaintiff,

     -against-                          04 Civ. 1854 (LAK)

CITY OF NEW YORK, et al.,

        Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

**MEMORANDUM OPINION**

Appearances:

        Jeffrey L. Kreisberg
        KREISBERG MAITLAND & THORNHILL, LLP
        *Attorneys for Plaintiff*

        Assistant Corporation Counsel
        Michael A. Cardozo
        CORPORATION COUNSEL OF THE CITY OF NEW YORK
        *Attorneys for Defendants*

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff Rodgerick Buntin brings this action against the City of New York, the New York City Human Resources Administration (the "HRA"), and the New York City Department of Correction (the "DOC"),[1] alleging that he was fired from his civil service employment without pre-termination notice in violation of 42 U.S.C. § 1983 ("Section 1983") and the Due Process Clauses of the United States and New York State Constitutions. Specifically, Buntin claims that Defendants

---

[1]     Buntin originally sought recovery from the New York State Department of Correctional Services (the "NYSDOCS") as well. However, he stipulated to the dismissal of all claims against NYSDOS in February 2005.

violated his due process rights by mailing notice of disciplinary charges and his pre-termination hearing to his home address rather than the address of the prison where he was then incarcerated. The matter is before the Court on cross motions for summary judgment.

*Facts*

On or about May 10, 2000, Buntin – then a tenured caseworker at HRA – was arrested for alleged parole violations and incarcerated at Rikers Island, a correctional facility operated by the DOC. Buntin claims – and defendants deny – that he promptly telephoned his director at HRA and his local union to notify them that he had been incarcerated. There is no dispute, however, that Buntin did not give his director the address there nor comply with an HRA Code of Conduct provision requiring employees to notify HRA in writing of any change of address.[2]

Buntin remained at Riker's Island for several months, during which time, needless to say, he did not report for work at HRA. In response to this prolonged absence, HRA sent two letters to Buntin's home address – one on May 23, 2000 and one on July 26, 2000 – advising Buntin that he would be subject to disciplinary proceedings if he did not report for work immediately and provide an explanation for his absence.[3] HRA did not mail a copy of these letters to Buntin at Riker's Island.[4] Although Buntin himself did not respond to either letter, counsel for his local union sent a letter to the Commissioner of the New York City Department of Investigation, the

---

[2]

       Kreisberg Decl. Ex. B ("Buntin Dep.") at 27-28; Klepfish Decl. Ex. C ("HRA Code of Conduct") at 5.

[3]

       Klepfish Decl. Ex F; Ex. H; Ex. T at ¶¶ 11-13.

[4]

       Kreisberg Decl. Ex. C ("Ligresti Dep.") at 28-30; Pl.'s Rule 56.1 Stmt. at ¶¶ 11, 14; Defs.' Resp. to Pl.'s Rule 56.1 Stmt. ¶¶ 11, 14.

Commissioner of HRA, and the Inspector General of HRA on June 27, 2000. The letter stated:

> "Please be advised that Rodgerick Buntin, a caseworker assigned to HRA's Office of Income Support, has been absent from work doe [*sic*] to his arrest for allegedly violating parole. Mr. Buntin is scheduled for a parole hearing on July 13, 2000 and hopes to be released at that time. We understand that Mr. Buntin's work location has been advised of the foregoing."[5]

Buntin, however, was not released from custody following his July 13, 2000 parole hearing. Instead, he was held at Riker's Island until the beginning of October, when he was moved to a series of state prison facilities.[6] Buntin did not inform HRA of the transfers or of his new address at any of the state prisons.[7]

In October 2000, HRA instituted disciplinary charges against Buntin based upon his unauthorized absence and scheduled an informal conference regarding the charges.[8] HRA mailed copies of the notice to Buntin's home address by first class and certified mail and sent another copy by messenger, who personally delivered the notice to an adult relative of Buntin's then present at the address.[9] HRA did not mail a copy of the letter to Buntin in prison.[10] Buntin did not respond to the notice and did not appear for the conference, which was held in his absence on November 20, 2000 before Charise Latimer-Jackson, who recommended that Buntin be terminated based on his

---

[5]
    Klepfish Decl. Ex. G.

[6]
    Klepfish Decl. Ex. W ("DiCarlo Decl.") at 2; Buntin Dep. at 30-32.

[7]
    Buntin Dep. at 32-33.

[8]
    Klepfish Decl. Ex. J.

[9]
    Klepfish Decl. Ex. L.

[10]
    Ligresti Dep. 28-30; Pl.'s Rule 56.1 Stmt. at ¶ 16; Defs.' Resp. to Pl.'s Rule 56.1 Stmt. ¶ 16.

unauthorized absence and his "egregious record of discipline."[11]  On December 5, 2000, Latimer-Jackson mailed a letter to Buntin's home address, explaining her recommendation and advising Buntin that HRA would hold a hearing regarding his termination pursuant to New York Civil Service Law § 75 if he did not respond within five days.[12]  Latimer-Jackson did not send a copy of the letter to Buntin in prison.[13]

After Buntin failed to respond to the December 5, 2000 letter, HRA scheduled a disciplinary hearing at the Office of Administrative Trials and Hearings.  It mailed notices of the hearing to Buntin's home address by certified mail on January 24, 2001,[14] but did not send a copy to Buntin in prison.[15]  Buntin did not respond to the notice and did not appear for the hearing, which was held on February 7, 2001 before Administrative Law Judge Rosemarie Maldonado.[16]  Two weeks after the hearing, Judge Maldonado issued a Report and Recommendation finding that Buntin had been properly served with the disciplinary charges and notice of the hearing, and that Buntin had been absent from work without leave since May 11, 2000.  She recommended that Buntin's

---

[11]

    Klepfish Decl. Ex. M.

[12]

    Klepfish Decl. Ex. N; Ex. O.

[13]

    Ligresti Dep. 28-30; Pl.'s Rule 56.1 Stmt. at ¶ 19; Defs.' Resp. to Pl.'s Rule 56.1 Stmt. ¶ 19.

[14]

    Klepfish Decl. Ex. Q; Ex. R.

[15]

    Ligresti Dep. 28-30; Pl.'s Rule 56.1 Stmt. at ¶ 21; Defs.' Resp. to Pl.'s Rule 56.1 Stmt. ¶ 21.

[16]

    Klepfish Decl. Ex. S.

employment be terminated.[17] HRA adopted this recommendation and sent a letter to Buntin's home address on March 16, 2001, informing him that he had been discharged from his position.[18] The letter was not sent to Buntin in prison.[19]

Buntin was released from prison on at the beginning of November 2001. He instituted this action on March 8, 2004.

*Discussion*

A.    *Summary Judgment Standard*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[20] The moving party has the burden of demonstrating the absence of a genuine issue of material fact,[21] and the Court must view the facts in the light most favorable to the nonmoving party.[22] "Where cross-motions for summary judgment

---

17

> *Id.*

18

> Klepfish Decl. Ex. U.

19

> Ligresti Dep. 28-30; Pl.'s Rule 56.1 Stmt. at ¶ 25; Defs.' Resp. to Pl.'s Rule 56.1 Stmt. ¶ 25.

20

> FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000).

21

> *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

22

> *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir. 1997).

are filed, a court 'must evaluate each party's motion on its own merits, taking care in each instance to draw all reasonable inferences against the party whose motion is under consideration.'"[23]

### B. Buntin's Federal Claims

Buntin's federal claims are styled as two separate causes of action, one for violation of Section 1983 and one for violation of his rights under the Fifth and Fourteenth Amendments to the United States Constitution. Section 1983, however, is merely the vehicle by which private citizens may seek recovery for violations of other federal laws or the United States Constitution. It "does not itself create any substantive rights," nor does it permit litigants to seek recovery for violation of state laws, like New York Civil Law § 75.[24] Accordingly, the Court will construe Buntin's complaint as asserting a single federal claim under Section 1983 for alleged violations of his Fifth and Fourteenth Amendment right to due process.[25]

To recover for violation of constitutional rights under Section 1983, a plaintiff must show (1) that the defendant deprived him of a right "secured by the Constitution or laws of the

---

[23]

*Hotel Employees & Rest. Employees Union, Local 100 v. City of New York Dep't of Parks & Recreation*, 311 F.3d 534, 543 (2d Cir. 2002) (quoting *Heublein, Inc. v. United States*, 996 F.2d 1455, 1461 (2d Cir.1993) (internal quotation marks omitted)); *accord Make the Road by Walking, Inc. v. Turner*, 378 F.3d 133, 142 (2d Cir. 2004).

[24]

*Wilson v. Garcia,* 471 U.S. 261, 278 (1985), *superceded by statute on other grounds as recognized in Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369 (2004).

[25]

*Connolly v. McCall,* No. 98 Civ. 2889 (DAB), 2000 WL 375239, at *3 (S.D.N.Y. April 12, 2000) (construing claims for "direct violations" of the Constitution as claims under Section 1983), *aff'd,* 254 F.3d 36 (2d Cir. 2001); *Verdon v. Consol. Rail Corp.,* 828 F.Supp. 1129, 1136 (S.D.N.Y. 1993) (construing a claim for violation of Section 1983 and for direct violation of the Fourteenth Amendment as a single cause of action "since Congress enacted § 1983 to serve as the means by [plaintiffs can bring Fourteenth Amendment claims] *in place of* asserting the claim more generally under the Fourteenth Amendment").

United States" and (2) that the defendant did so "under color of state law."[26]  Where, as here, the claim is based on a deprivation of notice in violation of the Due Process Clause of the Fourteenth Amendment, a plaintiff must demonstrate also that the defendant acted deliberately or recklessly in failing to provide notice.[27]  A deprivation that is merely negligent is not sufficient.[28]

Here, Buntin claims that defendants violated his Fourteenth Amendment rights by failing to send pre-termination notice to him in prison.  However, he has put forward no evidence – nor does he even allege in his complaint – that this failure was deliberate or reckless.  He does not dispute that he never informed defendants of his address in prison and never requested that future communications be directed to his place of incarceration.  Further, the undisputed facts indicate that defendants made a fairly diligent effort to provide notice, by sending a number of different letters to Buntin's home address and by delivering at least one of them to a relative of suitable age.  Absent any evidence suggesting that defendants sent the notices only to Buntin's home in a deliberate attempt to deprive him of actual pre-termination notice – or with reckless disregard for whether notice would be received – Buntin's federal claim is dismissed.

---

[26]

*Giordano v. City of New York,* 274 F.3d 740, 750 (2d Cir.2001) (quoting *Am., Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 49-50 (1999)).

[27]

*Watanabe Realty Corp. v. City of New York,* 315 F.Supp.2d 375, 389-90 (S.D.N.Y. 2003) (dismissing due process claim based on failure to provide pre-deprivation notice where there was no evidence that the failure was deliberate).

[28]

*Daniels v. Williams,* 474 U.S. 327, 328 (1986) ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty, or property."); *Shannon v. Jacobowitz,* 394 F.3d 90, 96 (2d Cir. 2005) ("[P]laintiffs must prove an intentional act in order to show a due process violation.").

*C.*     *Buntin's State Claim*

Having dismissed all of Buntin's federal law claims, the Court now must determine whether or not to exercise supplemental jurisdiction over Buntin's claim for violation of the Due Process Clause of the New York State Constitution.

Under 28 U.S.C. § 1367(c), "district courts may decline to exercise supplemental jurisdiction over a claim . . . [if] the district court has dismissed all claims over which it has original jurisdiction." The Second Circuit has explained that in determining whether or not to decline jurisdiction in such cases, district courts should consider a number of factors, including judicial economy, convenience, fairness, and comity.[29]

Here, these factors weigh against the exercise of supplemental jurisdiction over Buntin's remaining claim. First, the New York Court of Appeals does not appear to have ruled on whether sending pre-termination notice to a government employee's home address – rather than his or her place of incarceration – would suffice under the New York State Constitution. Comity therefore suggests that this Court should defer consideration of the issue in order to allow the New York courts an opportunity to rule on this arguably novel issue of state law.[30] Such a deferral would not be unfair to the litigants because there is no evidence that they have expended a significant "time,

---

[29]     *Motorola Credit Corp. v, Uzan,* 388 F.3d 39, 56 (2d Cir. 2004), *cert. denied,* 125 S.Ct. 2270 (2005).

[30]     *Valencia v. Lee,* 316 F.3d 299, 307-08 (2d Cir. 2003) (holding that the district court erred in exercising supplemental jurisdiction over state law claims that "raised unsettled questions of New York law).

effort, and money in preparing dependent claims."[31]   There has been no trial in the action and, because Buntin's state law claim is based on the same underlying facts as his federal claims, there could have been no discovery that related exclusively to the state law claim.[32]  Accordingly, Buntin's claim for violation of the Due Process Clause of the New York State Constitution is dismissed.

*Conclusion*

Defendants' motion for summary judgment dismissing the complaint (docket item 23) is granted.  The federal claim is dismissed on the merits and the state claim for lack of subject matter jurisdiction.  The plaintiff's cross motion for summary judgment is denied.

SO ORDERED.

Dated:  October 26, 2005

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[31]
*Purgess v. Sharrock,* 33 F.3d 134, 138 (2d Cir. 1994) (quoting 28 U.S.C.A. § 1367, Practice Commentary (1993) at 835).

[32]
*Motorola,* 388 F.3d at 56 (noting that it would not have been error for the district court to decline supplemental jurisdiction over state law claims even *after* trial).